# 15-4020

## *United States Court of Appeals for the Second Circuit*

TODD C. BANK, Individually and on
Behalf of All Others Similarly Situated,

*Plaintiff-Appellant,*

v.

UBER TECHNOLOGIES, INC.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## APPELLANT'S PRINCIPAL BRIEF

TODD C. BANK
119-40 Union Turnpike
Fourth Floor
Kew Gardens, New York 11415
(718) 520-7125

*Plaintiff-Appellant Pro Se*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

FEDERAL STATUTES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATE STATUTES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

AGENCY AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     A.   Course of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     B.   Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.    DEFENDANT'S TELEPHONE CALLS CONTAINED
      ADVERTISING AND THEREFORE VIOLATED THE
      PROHIBITION AGAINST THE PLACEMENT OF
      UNSOLICITED PRERECORDED CALLS TO
      RESIDENTIAL TELEPHONE LINES . . . . . . . . . . . . . . . . . . . . . . . . . 7

     A.   A Prerecorded-Voice Telephone Message Contains an
          "Advertisement" if it Contains "Any" Advertising Material . . . . . . 7

i

**Page**

**Table of Contents (*Cont'd*)**

B.  The District Court Erroneously Found That a
    Prerecorded-Voice Telephone Message That
    Contains *Some* Advertising Material Does Not
    Contain an "Advertisement" Even Though the Statute
    Defines "Advertisement" as "*Any*" Advertising Material . . . . . . . . . 9

C.  The Advertising in Defendant's
    Calls Was Not "Incidental" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

II.  DISMISSAL OF THE STATE-LAW
     CLASS CLAIMS WAS IMPROPER . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# <u>TABLE OF AUTHORITIES</u>

**Page**

## STATUTES

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 17, 18

28 U.S.C. § 1367(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 17

47 U.S.C. § 227 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

## REGULATIONS

47 C.F.R. § 64.1200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 7, 8, 8, n.1, 9

## CASES

*Atterbury v. United States Marshals Service,*
   805 F.3d 398 (2d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Bank v. Caribbean Cruise Line, Inc.,*
   No. 12-cv-5572, 2014 WL 4258932 (E.D.N.Y. Aug. 27, 2014) . . . . . . . . . . . 12

*Kaplan v. First City Mortg.,*
   701 N.Y.S.2d 859 (N.Y. City Ct. Rochester) . . . . . . . . . . . . . . . . . . . . 17, n.3

*Lisk v. Lumber One Wood Preserving, LLC,*
   792 F.3d 1331 (11th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 21

Page

**Table of Authorities; Cases (*cont'd*)**

*Lisk v. Lumber One Wood Preserving, LLC*,
   993 F. Supp. 2d 1376 (N.D. Ala. 2014),
   *rev'd*, 792 F.3d 1331 (11th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Kenro, Inc. v. Fax Daily*,
   962 F. Supp. 1162 (S.D. Ind. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Shady Grove Orthopedic Associates v. Allstate Ins. Co.*,
   130 S. Ct. 1431 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 19, 20, 21

*Standard Fire Ins. Co. v. Knowles*,
   133 S. Ct. 1345 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Stern v. Bluestone*,
   883 N.Y.S.2d 782 (N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Tongue v. Sanofi*,
   --- F.3d ----2016 WL 851797 (2d Cir. Mar. 4, 2016) . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Cullen*,
   499 F.3d 157 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8


**AGENCY AUTHORITIES**

*Report and Order In the Matter of Rules and Regulations Implementing*
  *the Telephone Consumer Protection Act of 1991*,
   18 FCC Rcd. 14014 (July 3, 2003) . . . . . . . . . . . . . . . . . . . . . 9-10, 10, n.2, 12

*Rules and Regulations Implementing*
  *the Telephone Consumer Protection Act of 1991*,
  *Junk Fax Prevention Act of 2005*,
   71 Fed. Reg. 25967 (May 3, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## PRELIMINARY STATEMENT

This appeal is taken from: (1) an unreported Memorandum and Order by District Judge John Gleeson of the Eastern District of New York, dated, and entered with the clerk on, December 11, 2015 (the "Subject Order") (A-16 - A-21); and (2) the Judgment, dated, and entered with the clerk on, December 14, 2015 (A-22).

## STATEMENT OF JURISDICTION

The District Court had jurisdiction over the federal-law claims of Plaintiff-Appellant, Todd C. Bank ("Bank"), under 28 U.S.C. § 1331, and over Bank's state-law claims under 28 U.S.C. §§ 1332(d)(2)(A) and 1367(a). Bank filed a Notice of Appeal (A-22) on December 11, 2015, from the Subject Order, which had disposed of all of Bank's claims. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1.    The Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), makes it unlawful "to initiate any [unsolicited] telephone call to any residential telephone line using a[] . . . prerecorded voice to deliver a message," 47 U.S.C. § 227(b)(1)(B), but an otherwise unlawful call is exempt if it "does not include or introduce an *advertisement*," 47 C.F.R. § 64.1200(a)(3)(iii) (emphasis added); and an "advertisement" means "*any* material advertising the commercial availability or quality of any property, goods, or services." 47 U.S.C. § 227(a)(5), 47 C.F.R. § 64.1200(f)(1) (emphasis added). The question is whether the District Court properly

1

created an additional exemption, *i.e.*, an exemption for calls that play a prerecorded-voice message that includes *some* material that "advertis[es] the commercial availability or quality of any property, goods, or services" where the remainder of the message, *standing alone*, would be exempt as a call that "does not include or introduce an advertisement."

2.  New York General Business Law ("GBL") § 399-p contains provisions that place restrictions upon computer-dialed prerecorded telephone calls without regard to whether such calls are commercial. The private-right-of-action provision of Section 399-p provides that "any person who has received a telephone call in violation of [a provision of Section 399-p under which Bank asserted claims] may bring an action *in his own name* to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." GBL § 399-p(9) (emphasis added). The question is whether the bar on asserting the private right of action as a class-action claim applies in federal court even though the Supreme Court, in *Shady Grove Orthopedic Associates v. Allstate Ins. Co.*, 130 S. Ct. 1431 (2010), held that, where a state law creates a private right of action, the state's prohibition against asserting that private right of action as a class-action claim is not applicable in federal court.

## STANDARD OF REVIEW

The dismissal, by the District Court, of Bank's TCPA claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is to be reviewed *de novo*. *See Tongue v. Sanofi*, --- F.3d ----2016 WL 851797, *6 (2d Cir. Mar. 4, 2016). The dismissal of Bank's state-law claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is to be reviewed *de novo*. *See Atterbury v. United States Marshals Service*, 805 F.3d 398, 403 (2d Cir. 2015).

## STATEMENT OF THE CASE

**A.    Course of Proceedings**

On August 18, 2015, Bank commenced the District Court action by filing a complaint (A-6 - A-14).

On November 6, 2015, Defendant-Appellee, Uber Technologies, Inc. ("Uber"), served a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (A-15).

On December 11, 2015, the District Court issued the Subject Order, granting Uber's motion and dismissing the Complaint in its entirety (A-16 - A-21).

On December 11, 2015, Bank filed a Notice of Appeal (A-22).

On December 11, 2015, Bank filed a motion for reconsideration of the Subject Order (A-23).

On December 14, 2015, the District Court issued a Judgment (A-24).

On March 8, 2016, the District Court issued an order denying the motion for reconsideration (A-25 - A-26).

**B.    Statement of Facts**

Bank alleged that, on or about July 16, 2015, July 18, 2015, July 20, 2015, and July 21, 2015, Uber violated Bank's rights under Section 227(b)(1)(B) of the TCPA, which makes it "unlawful . . . to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(B) (the "Robocall Provision," the subject matter of which will be referred to as the "Robocall Prohibition"). *See* Compl., ¶¶ 16-20, 22-24, 27 (A-8 - A-10). As a result, Bank sought, individually and on behalf of the other class members, statutory damages of between $500 and $1,500 per violation, and injunctive relief, under 47 U.S.C. § 227(b)(3) (Prayer for Relief, A-14).

Bank also alleged that Uber's call violated GBL § 399-p(3)(a), which provides that "[w]henever telephone calls are placed through the use of an automatic dialing-announcing device, such device shall . . . state at the beginning of the call the nature of the call and the name of the person or on whose behalf the message is being transmitted and at the end of such message the address, and telephone number of the person on whose behalf the message is transmitted, provided such disclosures are not otherwise prohibited or restricted by any federal, state or local law." GBL § 399-

4

p(3)(a). As a result, Bank sought, individually and on behalf of the other class members, statutory damages of $50 per violation, and injunctive relief, under GBL § 399-p(9) (Prayer for Relief, A-14).

## SUMMARY OF ARGUMENT

### Point I

Under the plain language of the TCPA and its corresponding regulations, an "advertisement" means "*any* material advertising the commercial availability or quality of any property, goods, or services." 47 U.S.C. § 227(a)(5), 47 C.F.R. § 64.1200(f)(1) (emphasis added). Thus, the District Court acted erroneously in ruling that a prerecorded-voice telephone message does not contain an advertisement, *i.e.*, that it does not contain "*any* material advertising the commercial availability or quality of any property, goods, or services," and is therefore exempt, on the basis that the *non*-advertising portion of the message did not contain any advertising material and would thereby, standing alone, be exempt as a call that "does not include or introduce an advertisement." 47 C.F.R. § 64.1200(a)(3)(iii). The exemption that the District Court created contradicts the plain language of the term "advertisement," which alone compels reversal. Furthermore, the exemption would create a loophole that would swallow the prohibition.

Finally, the portion of advertising contained in Uber's message was not what the FCC describes as "incidental."

**Point II**

In *Shady Grove Orthopedic Associates v. Allstate Ins. Co.*, 130 S. Ct. 1431 (2010), the Supreme Court resolved much uncertainly in the case law regarding state laws that create private rights of actions but do not permit such actions to be brought as class actions. The Court emphatically held that, where a state law creates a private right of action, the state's prohibition against asserting that private right of action as a class-action claim is not applicable in federal court. Thus, the District Court, which did not even address this seminal case, acted erroneously in holding that GBL § 399-p, which provides that "any person who has received a telephone call in violation of [a provision of Section 399-p under which Bank asserted claims] may bring an action *in his own name* to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions," GBL § 399-p(9) (emphasis added), prohibits class claims in federal court.

**ARGUMENT**

**POINT I**

**DEFENDANT'S TELEPHONE CALLS CONTAINED ADVERTISING
AND THEREFORE VIOLATED THE PROHIBITION AGAINST
THE PLACEMENT OF UNSOLICITED PRERECORDED
CALLS TO RESIDENTIAL TELEPHONE LINES**

**A.     A Prerecorded-Voice Telephone Message Contains an
"Advertisement" if it Contains "Any" Advertising Material**

If the entire text of Uber's messages had been "Uber ended the days when you couldn't get a ride home because cabs didn't want to leave Manhattan . . . . [Y]ou, and all New Yorkers, deserve reliable transportation," Compl., ¶ 22 (A-9), or "Uber ended the days when New Yorkers had to worry about being able to find a reliable ride home," *id.*, ¶ 23 (A-9), such calls, having been made without Bank's consent, *see id.*, ¶ 27 (A-10), would have violated the Robocall Provision.

If Uber's calls had been limited as described above, its calls would not have been exempt as calls that were "not made for a commercial purpose," 47 C.F.R. § 64.1200(a)(3)(ii) (as further addressed below), nor as calls that are made for "a commercial purpose but [do] *not* include or introduce an *advertisement* or constitute telemarketing." 47 C.F.R. § 64.1200(a)(3)(iii) (emphases added).

With respect to the latter exemption, the FCC's TCPA regulations define "advertisement" as "*any* material advertising the *commercial availability* or *quality* of any property, goods, or services," 47 C.F.R. § 64.1200(f)(1) (emphases added),

mirroring verbatim, in relevant part, the statutory definition of "unsolicited advertisement" (which uses the word "unsolicited" because the definition pertains to calls that are made without the recipient's consent, *see* 47 U.S.C. § 227(a)(5), whereas the FCC regulations refer separately to the issue of consent. *See* 47 C.F.R. § 64.1200(a)(3)). If Bank had not heard of Uber, or had not known what service Uber provides, he would have learned from its messages that Uber offered the service of providing a "a ride home" even if Bank did not live in Manhattan, Compl., Dkt. No. 1, ¶ 22 (A-9), and that Uber provides "reliable transportation," *id.*, or, similarly, that, as a "New Yorker," he no longer "had to worry about being able to find a reliable ride home." *Id.*, ¶ 23 (A-9). Thus, Uber's messages plainly advertised the commercial availability *and* quality of Uber's service (of course, one need not be familiar with the goods or service to which a robocall refers in order for the message to constitute advertising).[1] Moreover, the meaning of "any" is clear: "[t]he word 'any' means 'without restriction or limitation.'" *United States v. Cullen*, 499 F.3d 157, 163 (2d Cir. 2007).

---

[1] In comparison to the term "advertising," the FCC defines "telemarketing" more narrowly, *i.e.*, as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12) (verbatim of both the statute's definition of "telephone solicitation," *see* 47 U.S.C. § 227(a)(4), and the FCC's definition of "telephone solicitation," *see* 47 C.F.R. § 64.1200(f)(14)). However, Bank relies only upon the broader definition of "advertisement."

**B.     The District Court Erroneously Found That a Prerecorded-Voice Telephone Message That Contains *Some* Advertising Material Does Not Contain an "Advertisement" Even Though the Statute Defines "Advertisement" as "*Any*" Advertising Material**

Given that Uber's messages contained material that, standing alone, would have violated the statute, the question is whether Uber's calls are exempt because they also contained material, *i.e.*, political material, that, standing alone, would have invoked an exemption. That exemption is the exemption for calls that are made for "a commercial purpose but [do] not include or introduce an advertisement or constitute telemarketing," 47 C.F.R. § 64.1200(a)(3)(iii), for the FCC has explained, with respect to another exemption, *i.e*, for calls that are "not made for a commercial purpose" (47 C.F.R. § 64.1200(a)(3)(ii)), that a call made in furtherance of the interests of a commercial entity is a commercial call even if the call does not meet the definition of "advertisement" (or "telemarketing"):

> Among the examples of [commercial] calls that do not include the transmission of any unsolicited advertisement, the Commission cited [in its *Notice of Proposed Rulemaking and Memorandum and Order*, 7 FCC Rcd. 2736, 2737, ¶ 11 (Apr. 10, 1992)] calls from a business that wishes to advise its employees of a late opening time due to weather; or calls from a nationwide organization that wishes to remind members of an upcoming meeting or change in schedule; or calls from a catalogue or delivery company to confirm the arrival, shipment, or delivery date of a product to a customer.

*Report and Order In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14095, n.459 (July

3, 2003) ("2003 Report & Order").[2]

The District Court described Uber's calls as "unmistakably political in nature. Uber opposed Mayor de Blasio's proposed bill that would have severely restricted the number of for-hire vehicles that could be licensed to operate in New York City," A-19, citing Matt Flegenheimer, *De Blasio Administration Dropping Plan for Uber Cap, for Now*, N.Y. Times, July 23, 2015, at A20, which further noted, more specifically, that the bill would have "place[d] a cap on the number of vehicles Uber operates in New York City." Thus, it is indisputable that the political material in Uber's messages had a commercial purpose.

The fact that Uber's messages contained exempt material does not mean that Uber was entitled to include those portions that would indisputably have been unlawful if they had stood alone, for a call that contains both permissible and impermissible material is prohibited. *See Kenro, Inc. v. Fax Daily*, 962 F. Supp. 1162, 1170-1172 (S.D. Ind. 1997) (finding that an unsolicited fax that contained both permissible and impermissible material was prohibited by Section 227(b)(1)(C) of the TCPA (which, like prerecorded telephone calls to residential numbers, prohibits faxes that meet the definition of "unsolicited advertisement")).

The District Court, without denying that Uber's calls contained material that

---

[2] The text shows that the above quotation was referring specifically to commercial calls. *See* 2003 Report & Order, 18 FCC Rcd. 14014, 14095.

what otherwise have indisputably fallen within the meaning of "advertising material," exempted the entire message on the basis that this material "contextualize[d] Uber's interest in opposing the proposed legislation and in its lobbying efforts against it. Such a broad reading of the term 'advertisement' would gut the exemption the FCC carved out for political speech." A-20 -A-21. On the contrary, the permissible inclusion of what is indisputably advertising material would gut the Robocall Prohibition. If Uber's calls were exempt on the basis of their inclusion of political material, then anyone would be able to make prerecorded telephone calls containing both political and advertising content, and then claim, as did Uber, that the calls are exempt. The types of such calls would be virtually limitless. An oil company would be entitled to make unsolicited prerecorded telephone calls advertising its goods or services yet claim an exemption if the calls also contained political material, such as in the case of the following message:

> Hi. It's Dave with ExxonMobil, and we need your help. ExxonMobil ended the days when you had to worry about your engine drying out when we invented our special all-natural motor-oil blend. Now the President is considering a bill that would impose a special tax on synthetic motor oil because his environmentalist donors are telling him to. But why on earth would your Congressman ever consider voting for something like this? They should stand up for you, not take orders from the President. Your Congressman is sponsoring this bill, and we need your voice. Please call your Congressman, and tell them to take their names off the motor-oil-tax bill. Because you, and all drivers, deserve affordable and reliable motor oil. Paid for by ExxonMobil 212-257-1745.

A software company would be entitled to promote its products in unsolicited prerecorded telephone calls by also urging recipients to support pending digital-copyright legislation. A business would be permitted to turn otherwise-unlawful calls into exempt calls by explaining to recipients its viewpoint on the tax code.

As the FCC has explained, "prerecorded messages containing . . . information about goods and services that are commercially available are prohibited to residential telephone subscribers, if not otherwise exempted." "2003 Report & Order, 68 Fed. Reg. 44144, 44162, ¶ 100; *see also Bank v. Caribbean Cruise Line, Inc.*, No. 12-cv-00584, Report & Recommendation (E.D.N.Y., Dkt. No. 49, Aug. 26, 2013), at 10, *adopted*, Sept. 30, 2013 (quoting same).

The District Court cited *Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218, 224 (6th Cir. 2015), as "rejecting [a] broad reading of 'advertisement' under the TCPA." A-21. This citation was misplaced. In *Sandusky*, which addressed the TCPA's prohibition against sending unsolicited fax advertisements, *see* 47 U.S.C. § 227(b)(1)(C), the plaintiff was a chiropractic office, and the defendant rendered services to providers of third-party healthcare plans ("plan providers," or what the court referred to as "sponsors"). Typically, the defendant's client was an employer, and a plan's members were the employer's employees. Among the defendant's services was the maintenance of a list, or "formulary," of medicines that are available through a particular healthcare plan. The defendant, in

addition to sending those lists to its plan-provider clients in order to assist them in

choosing which prescription-drug plans to provide to their members, also sent the

lists to medical offices whose patients used a healthcare plan that was provided by

one of the defendant's clients, thus enabling a medical office to know which

prescription drugs would be paid for by the healthcare plan of a patient who the office

was treating.

The plaintiff brought an action based upon two faxes. The court described the

first fax as follows:

> Th[e] fax, entitled "Formulary Notification[,]" . . . ,
> informed [the plaintiff] that "[t]he health plans of many of
> your patients have adopted" [the defendant]'s formulary.
> The fax asked [the plaintiff] to "consider prescribing plan-
> preferred drugs" to "help lower medication costs for [the
> plaintiff's] patients," and it listed some of those drugs. It
> also told [the plaintiff] where [the plaintiff] could find a
> complete list of the formulary. Other than listing [the
> defendant]'s name and number, the fax did not promote
> [the defendant]'s services and did not solicit business from
> [the plaintiff].

*Id.* at 220. The second fax, "entitled 'Formulary Update[,]' . . . , informed [the

plaintiff] that a certain respiratory[-]drug brand was preferred over another brand, and

that using the preferred brand could save patients money." *Id.* at 220-221.

Regarding the two faxes, the court found: "[n]either . . . fax . . . contained

pricing, ordering, or other sales information. Nor did either fax ask [the plaintiff],

directly or indirectly, to consider purchasing [the defendant]'s services. The

undisputed facts in the record instead show that each merely informed [the plaintiff] which drugs its patients might prefer, irrespective of [the defendant]'s financial considerations." *Id.* at 221. Upon these facts, the court detailed its view that the faxes were not advertisements:

> [The faxes] call items (medications) and services ([the defendant]'s formulary) to [the plaintiff]'s attention, yes. But no record evidence shows that they do so because the drugs or [the defendant]'s services are for sale by [the defendant], now or in the future. In fact, the record shows that [the defendant] has no interest whatsoever in soliciting business from [the plaintiff]. And no record evidence shows that the faxes promote the drugs or services in a commercial sense—they're not sent with hopes to make a profit, directly or indirectly, from [the plaintiff] or the others similarly situated. Nor does any record evidence show that [the defendant] hopes to attract clients or customers by sending the faxes. The record instead shows that the faxes list the drugs in a purely informational, non-pecuniary sense: to inform [the plaintiff] what drugs its patients might prefer, based on [the defendant]'s formulary—a paid service already rendered *not to* [*the plaintiff*] *but to* [*the defendant*]*'s clients*. Under the Act's definition, and in everyday speak, these faxes are therefore not advertisements: They lack the commercial components inherent in ads.

*Id.* at 222 (emphasis added).

A key distinction between the *Sandusky* faxes and Uber's robocalls is that, as the *Sandusky* court explained in the above quotation, the recipients of the faxes were not even in a position to pay for anything that the faxes concerned, whether directly or indirectly. Obviously, that is not the case with respect to Uber's robocalls. Thus,

the District Court's invocation of *Sandusky* was misplaced.

In sum, Uber did not restrict its messages to permissible content, and thus may not invoke an exemption to the Robocall Prohibition.

## C. The Advertising in Defendant's Calls Was Not "Incidental"

As noted in Point I(A), *supra*, the TCPA's treatment of faxes corresponds, with respect to the term "advertisement," to the statute's treatment of prerecorded calls to residential telephone lines. Thus, the following commentary by the FCC with respect to faxes applies equally to such calls:

> facsimile communications that contain *only information*, such as industry news articles, legislative updates, or employee benefit information, would not be prohibited by the TCPA rules. An *incidental advertisement contained in a newsletter does not convert the entire communication into an advertisement. In determining whether an advertisement is incidental to an informational communication, the Commission will consider, among other factors, whether the advertisement is to a bona fide "informational communication."* In determining whether the advertisement is [incidental] to a bona fide "informational communication," the Commission will consider whether the communication is issued on a *regular schedule*; whether the *text of the communication changes from issue to issue*; and whether the communication is directed to specific regular recipients, *i.e.*, to *paid subscribers or to recipients who have initiated membership in the organization that sends the communication*. We may also consider the amount of space devoted to advertising versus the amount of space used for information or "transactional" messages and whether the advertising is on behalf of the sender of the communication, such as an announcement in a membership organization's monthly newsletter about an upcoming conference, or whether the

advertising space is sold to and transmitted on behalf of entities other than the sender. Thus, a trade organization's newsletter sent via facsimile would not constitute an unsolicited advertisement, so long as the newsletter's primary purpose is informational, rather than to promote commercial products. We emphasize that *a newsletter format used to advertise products or services will not protect a sender from liability* for delivery of an unsolicited advertisement under the TCPA and the Commission's rules. We will review such newsletters on a case-by-case basis should they be brought to our attention.

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Junk Fax Prevention Act of 2005*, 71 Fed. Reg. 25967, 25973 (May 3, 2006) (emphases added).

Although the FCC's commentary ignores the plain meaning of the word "any" and should therefore not be followed, Uber's calls did not come within the FCC's description of "incidental advertisement" in any event. First, Uber's calls were not issued on a regular schedule. Second, the text of Uber's messages was essentially the same. *See* Compl., ¶¶ 22, 23 (A-9). Third, there has been no suggestion that Uber's calls were made to specific regular recipients, much less recipients who were paying (or even non-paying) subscribers of any kind, or that the recipients had initiated membership, or equivalent status, with respect to Uber. Finally, the amount of advertising in Uber's calls was clearly not *de minimis*, but instead made up more than 20 percent of the words in one instance, *see* Compl., ¶ 22 (A-9) ( 26 of 122 words), and one-seventh of the words in the other. *See id.*, ¶ 23 (A-9) (19 of 133 words). *Cf.*

16

*Stern v. Bluestone*, 883 N.Y.S.2d 782 (N.Y. 2009), in which the court found that a series of faxes titled "Attorney Malpractice Reports," whose "substantive content varied from issue to issue," *id.* at 782, contained "incidental advertisements" where the only "advertising" that the plaintiff appears to have argued to have been contained in the faxes was the sender's "contact information and web site addresses." *Id.*

### POINT II

### DISMISSAL OF THE STATE-LAW
### CLASS CLAIMS WAS IMPROPER

The District Court, in the Subject Order, dismissed Bank's GBL § 399-p(3)(a) claims on the sole basis of the District Court's discretion to decline to exercise supplemental jurisdiction over those claims. *See* A-21.[3] However, the District Court overlooked the fact that Bank asserted, with respect to his state-law claims, not only *supplemental* jurisdiction under 28 U.S.C. § 1367(a), *see* Compl., ¶ 6 (A-7), but also jurisdiction under 28 U.S.C. § 1332(d)(2)(A) of the Class Action Fairness Act, Pub. L. No. 109-2, Feb. 18, 2005, 119 Stat. 4 ("CAFA"), *see id.*, ¶¶ 6, 7 (A-7), which

---

[3] The provision under which Bank asserted his GBL claims is Section 399-p(3)(a), which applies not based on the content of a call but simply "[w]henever telephone calls are placed through the use of an automatic dialing-announcing device." GBL § 399-p(3) (Bank's GBL claims are based on the allegation that the calls violated GBL § 399-p(3)(a) by failing to include Uber's address. *See* Compl., ¶¶ 21, 25 (A-9, A-10); *see also Kaplan v. First City Mortg.*, 701 N.Y.S.2d 859, 862 (N.Y. City Ct. Rochester 1999) (addressing a telephone solicitation but noting that GBL § 399-p "places restrictions on the use of automatic dialing-announcing devices *and* placement of consumer calls in telemarketing" (emphasis added)).

constitutes *original* jurisdiction. *See Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345 (2013) ("[t]he Class Action Fairness Act of 2005 (CAFA) provides that the federal 'district courts shall have original jurisdiction' over a civil 'class action' if, among other things, the 'matter in controversy exceeds the sum or value of $5,000,000.'" *Id.* at 1347, quoting 28 U.S.C. § 1332(d)(2), (d)(5)).

The District Court, in denying Bank's motion for reconsideration, did not address Bank's allegation of original jurisdiction over Bank's claims under GBL § 399-p. Instead, the District Court upheld its dismissal of those claims on the basis that GBL § 399-p "authorizes only *individuals* the right of action; it does not provide for a class action mechanism. *See* N.Y. Gen. Bus. Law § 399-p ('In addition to the right of action granted to the attorney general pursuant to this section, any person who has received a telephone call in violation of subdivision three, four or five of this section may bring an action *in his own name* to enjoin such unlawful act or practice.'" A-26 (emphases in original) (the quoted portion of the statute continues: ", an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions").

The District Court's reasoning overlooked indisputably applicable case law, which holds that, where a state law grants a private right of action to an individual, the question of whether the claims under that law may be heard on a class basis in federal court is to be determined solely upon whether the class-certification

prerequisites of Rule 23 of the Federal Rules of Civil Procedure have been satisfied, regardless of whether a class action under the state law could have been brought in the state's own courts. *See Shady Grove Orthopedic Associates v. Allstate Ins. Co.*, 130 S. Ct. 1431 (2010); *see also Bank v. Independence Energy Group, LLC*, 736 F.3d 660 (2d Cir. 2013) (TCPA claims may be heard as class actions in New York federal courts even if they are precluded from being heard in New York *state* courts).

In *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331 (11th Cir. 2015), the plaintiff brought a federal-court action asserting class claims under the Alabama Deceptive Trade Practices Act ("ADTPA"), which creates a private right of action but also states that "'[a] consumer or other person bringing an action under [the ADTPA] may not bring an action on behalf of a class.'" *Id.* at 1134, quoting Ala. Code § 8–19–10(f), such that "[i]f th[e] case were pending in an Alabama state court, the statute would preclude presentation of the ADTPA claims in a private class action." *Id.* The court proceeded, however, as follows: "[b]ut the case is in federal court. Federal Rule of Civil Procedure 23 allows class actions and makes no exception for cases of this kind." *Id.* Whereas *Shady Grove* addressed a state statute, *i.e.*, Section 901(b) of the New York Civil Practice Law and Rules ("CPLR"), that applied generally to actions in New York state courts, the *Lisk* court explained that the application of *Shady Grove* was not dependent on the organization of a state's statutory law:

> [T]he New York prohibition on statutory-penalty class actions was included in a procedural statute addressing class actions generally; the prohibition was not part of the statute that created the statutory penalty. The Alabama class-action prohibition, in contrast, is part of the ADTPA itself. Some district courts have said this is controlling. *See Lisk v. Lumber One Wood Preserving, LLC*, 993 F.Supp.2d 1376, 1383–84 (N.D.Ala.2014) (collecting cases). But *how a state chooses to organize its statutes affects the analysis not at all*. Surely the New York legislature could not change the *Shady Grove* holding simply by reenacting the same provision as part of the statutory-interest statute [(*i.e.*, the statute under which claims were brought in *Shady Grove*)]. Surely an identical ban on statutory-interest class actions adopted by another state would not override Rule 23 just because it was placed in a different part of the state's code. The goal of national uniformity that underlies the federal rules ought not be sacrificed on so insubstantial a ground. And more importantly, the question [of] whether a federal rule abridges, enlarges, or modifies a substantive right *turns on matters of substance—not on the placement of a statute within a state code*.

*Id.* at 1336 (emphasis added). The court further noted that, "[i]t is true, as well, that [CPLR § 901(b)], at least on its face, applied to claims arising not only under New York substantive law, but under the laws of other jurisdictions[,] [which] weakened the argument that the New York class-action statute created substantive rights." *Id.* However, the court again rejected the notion that the application of Shady Grove is dependent upon the organization of a state's statutory code:

> [T]he claim at issue in *Shady Grove* arose under New York substantive law. The Supreme Court held that Rule 23 controlled over the New York class-action statute even as applied to a claim arising under New York substantive law. And again, *the New York legislature or courts surely could*

> *not have changed the result simply by amending or construing the New York class-action statute so that it applied only to claims arising under New York substantive law. The Shady Grove holding cannot fairly be limited to state class-action provisions that, on their face, seem to apply to claims arising under the laws of other jurisdictions.*

*Id.* (emphasis added). Just as the court's reasoning is equally applicable to the present case, so, too, is the court's summary: "[t]he disputed issue is not whether [the plaintiff] and other buyers are entitled to redress for any misrepresentation; they are. The disputed issue is *only whether they may seek redress in one action or must instead bring separate actions* . . . . Because Rule 23 *does not 'abridge, enlarge or modify any substantive right,'* Rule 23 is valid and applies in this action." *Id.* at 1337-1338 (emphases added); *see also* 7A Charles Alan Wright, *et al.*, *Federal Practice & Procedure*, § 1758 (3d ed.) ("[i]t now is clear that Rule 23 controls whether a class action may be maintained, regardless of a conflicting state law.")

In sum, the District Court erred in holding that the class-action prohibition of GBL § 399-p applies in federal court.

## **CONCLUSION**

The Judgment of the District Court should be reversed; and Plaintiff-Appellant

should be granted such other and further relief as authorized by law.

Dated: March 10, 2016

        **s/ *Todd C. Bank***
Todd C. Bank
119-40 Union Turnpike
Fourth Floor
Kew Gardens, New York 11415
(718) 520-7125

Plaintiff-Appellant *Pro Se*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,292 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using 14-point Times New Roman.


<u>      s/ *Todd C. Bank*      </u>
Todd C. Bank
Plaintiff-Appellant *Pro Se*
Dated: March 10, 2016

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 10, 2016, a true and accurate copy of the foregoing, along with Plaintiff-Appellant's Appendix, was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed to those parties, if any, by certified mail who are not served via the Court's electronic filing system.

_____ **s/ _Todd C. Bank_** _____

Todd C. Bank
Dated: March 10, 2016